Case number 23-3546 from the District of Eastern Missouri, United States v. Derrecol Jennings Ms. Goimerack? Goimerack, Your Honor. Could you say that again? Goimerack. Goimerack, all right. Thank you. Please proceed when you're ready. Thank you, Your Honor. Counsel, may it please the Court. My name is Melissa Goimerack, and I represent Derrecol Jennings in this appeal. I would like to reserve two minutes for rebuttal. In this case, Mr. Jennings pled guilty, giving up valuable constitutional rights in exchange for the government's agreement to unreservedly recommend a sentence of 40 months. At the sentencing, however, the government undercut its own recommendation in a way that was a clear breach of the plea agreement. The comments that the government made about the joint recommendation being based on a mistake undid the basis of that recommendation in the district court's mind. By doing exactly what he said he wouldn't do, giving lip service to 40 months and then almost immediately saying this is wrong, the government breached the plea agreement. But he went on when the district court clarified that saying I'm not trying to redo the guidelines sentence or the guidelines calculation. What I actually care about is we have all these revocations. The prosecutor immediately said, well, on that issue, we completely support the defendant and the proposed sentence. What I was just pointing out is I learned my lesson because I missed two criminal history points. Am I misreading the situation? No, Your Honor. But I think that if a close reading of the transcript in this case shows that the court asked a very specific and clear question. The court did not ask about guidelines calculations or possible errors or anything related. What the court specifically directed its question to was the bond violation. So the government, in giving this response about the mistake, it was unresponsive to the court's question. It introduced extrinsic reasons for the court to not follow the joint recommendation that the government agreed to in this case. Did the government retract its recommendation? I believe that implicitly in saying in response to the court's question about why the government was recommending a below guideline sentence, that it was based on mistake. The government actually did make the recommendation that was agreed to. The government made the recommendation, immediately said it was a mistake, and then only reaffirmed that recommendation at the prompting of the court. I'm not sure. Maybe. I wasn't there, so I didn't see what happened. But in just reading the transcript, it looked to me like, hey, the judge comes in, he's got all sorts of questions, problems, concerns. Not really thinking that this joint recommendation is in the wheelhouse of what he's willing to accept. Then Judge Ross says, it's hard to understand. Now, any time a judge starts off on you with hard to understand how you get to a certain place, people are going to offer up some explanation. And it seems like what you have here is just sort of a hard to understand how there could be a recommendation for a downward variance, given all those violations of bond. That's the focal point. And the government's there. They have made the recommendation. They continue to make the recommendation. The only thing is, at some point, the government says, yeah, to be candid with the court, we negotiated the 40-month recommendation. I did not account for the two additional points. It's more of an explanation of how we got to where we're at. Listen, I have seen half-hearted recommendations by prosecutors. And I have seen cases where the prosecutor's been sternly reprimanded and the case comes back because they haven't advocated for it. But in this case, it looks like the government never really backed down. And it didn't look very half-hearted to me. I mean, there's like, but judge, listen, we are standing by our recommendation. That seems different. So I would argue that the government's initial argument, where it said, I don't want to belabor the defense's arguments that were just made. I'm happy to answer any of the court's questions. But we are jointly recommending 40 months. That, to me, is potentially an unenthusiastic or half-hearted recommendation. It doesn't give a lot of reasons. It cites the reasons that were just listed. Importantly, the PSR in this case contained a number of reasons in the section of reasons why the district court may want to consider a variance. So there were reasons. There were concrete reasons that the government had reviewed in the PSR that it could have cited to. What about the government's or the prosecutor's duty of candor to the court? So I read it a little differently than you do. But one very plausible reading of this is district court asks a question. Prosecutor kind of misunderstands and said, well, if you're really concerned about this, yeah, I realize there's this guidelines issue. And I missed it. But we're still kind of standing by our recommendation. But I understand we missed two criminal history points. And then the district court clarifies after the prosecutor's candid with the court and then does something else. So it's a variation of my earlier question. But we want to encourage prosecutors and attorneys generally to be candid with the court when they think a mistake has been made. Not necessarily backhand of the plea agreement, but when the court specifically asks about it, oh, yes, we did make a mistake. And here's the mistake we made. Two things that I'd like to point out, Your Honor. First, in the case United States v. Fowler from this court from 2006, the holding was that the fact that the court asked for the government's position does not excuse the government from failing to abide by the plea agreement. The government has options. The government has all the- What's the authority that would indicate that the, I guess you might consider it equivocation of the government about its recommendation, is what constitutes a reneging on its promise? The district court in pronouncing sentence in this case began with the proposition that it gives great consideration to the joint recommendation of the parties. When the first thing out of the government's mouth when questioned about that joint recommendation is this was a mistake, that destroys the foundation of that joint recommendation and essentially invites the district court to correct that mistake. Now, what's our review standard on this? Is this a plain error review? This is a plain error review, Your Honor. I did not object at the time, and that is my mistake. However, I believe that if you look at the totality of the circumstances, it is clear that- And I was focused, frankly, on the district court's question, which was about the bond violations. It became very obvious that the government had breached the plea agreement after the fact. And I think the plain error here is shown by the fact that as soon as the government said that it had made a mistake, the court immediately redirected, immediately said, I don't want to get into the guidelines calculation and refocused it onto the bond violations. And then again, after the government giving its explanation on the bond violations, the government never reaffirms on its own. It's at the court's prompting because of how confusing it is at this point, what's going on. But you're still recommending the 40 months to which the government responds in the affirmative. How are the substantial rights affected, though? And I ask this because the district court clarified, and then the prosecutors sort of went ahead and supported on the bond violations, supported the defendant generally. So I'm just trying to figure out if the district court wasn't getting at something, didn't care about something, how it could have affected the ultimate outcome. I think that the district court did care about it, and it's shown by the fact that the first thing he said in pronouncing sentence was that he generally gives great weight to joint recommendations. Implicit in that statement is the fact that this joint recommendation should not be given great weight because it was made in error. The government could have very easily, if that's what it intended, said, we agree to a joint recommendation in the middle of the guidelines. That's not what the government offered in this case. Just like the defense is stuck with any errors that are made, that there's no ability to withdraw the plea when guidelines don't come out as expected, the government is equally bound by that. Well, but Fowler, you know, I'm still hung up on your Fowler argument. Because in Fowler, the government actually advocated for a level 29, right? They had a plea agreement where they said they were supposed to come in at level, I don't remember, 24 or 25. And the judge said, yeah, I'm thinking it's 29. And then the PSR came in and said 29. Then the government advocated in their pre-hearing submission for 29. And then they stood up and advocated for 29. That seems a whole lot different than what happened here. Because in that case, the government was truly advocating for something different than what their agreement was. Whereas here you have what appears to me to be mainly a stray comment. And then just the continuation of saying 40 months, 40 months, 40 months. And the judge weren't buying it. But, Your Honor, he never said 40 months again. The words 40 months literally never came out of the government's mouth again. He only reaffirmed when asked by the court specifically. And I cite Fowler in response to the question about candor to the court. Because I believe that there's a way to have candor with the court that acknowledges that there were other reasons for the joint recommendation. Thank you, Your Honor. Thank you, Ms. Poymeric. Mr. Hayes. Thank you, Your Honor. May it please the court, Michael Hayes of the United States. In this case, there was no breach. Acting on behalf of the government, I fulfilled the promise made in the plea agreement. I recommended the 40-month sentence that had been agreed upon unequivocally and twice upon questioning by the judge. First, when the judge first turned to me, I essentially adopted the points that had already been made by defense counsel. When I said, a judge, in the interest of not belaboring the points already made, I just asked that you accept the joint recommendation. And while it may be true that I did not say 40 months, the court was aware that it was a 40-month joint recommendation. Again, I adopted the points already made by defense counsel and asked the court to accept the joint recommendation. Again, clearly, unequivocally. But I was also aware, going into this sentencing hearing, that this district judge might view, with some degree of skepticism, a recommendation for a downward variance. I suspect that defense counsel had the same concerns when, at the bottom of page 10 of the sentencing transcript, she conveyed to the judge that the parties had negotiated a settlement that, quote, ended up being a moderate downward variance, signaling to the court that, again, the downward variance, the fact of it being a downward variance, had not been contemplated at the time of the plea. So when the court turned to me, I did also offer to answer any questions from the court, recognizing that this would be a downward variance and anticipating that this court, again, would be skeptical of that. And I was right. The court turned to me and, in a manner that, if I may dare to say, was somewhat bristling, questioned how can there be a downward variance with all of the pretrial violations. She said, I can't understand how there could be this recommendation. And so I answered what I thought the question was. When he's asking me how can there be a recommendation for a downward variance, I explained how I got to that 40-month recommendation. At no point did I stand down from the recommendation. At no point did I say that 40 months wasn't appropriate or that I wouldn't have made it if I had known things differently at the time. I simply explained, again, in candor, that that's how I arrived at that recommendation. And at the time, I thought that was the best way to advance the plea agreement, to advance the joint recommendation, because I could sense that the court was a little bit annoyed with the joint recommendation and the fact of it being a downward variance. And I thought if I explained that that wasn't originally intended, he might be less annoyed. Yeah, but you also provided a reason for him to not go with the recommendation, which is, it's not clear to me that the judge had realized you missed two criminal history points. And so, although he did not rely on that eventually, it did give reason for him to depart. Now, maybe that's not a breach, but it definitely did not help the defendant. Well, it may be more information than the court needed at that time, but if it signaled anything about my own personal views about the case and the guidelines and the defendant, it was that I was surprised that a conviction from 30 years prior would still carry five criminal history points, that I had accounted for the three, and it was a very serious crime, but I had not accounted for there being an extra two points for a total of five criminal history points from a crime that was so old. If anything, it conveyed that I thought perhaps the guidelines, the criminal history points, were a little bit inflated in this particular case. But what I did not say was that I would do something differently if I had known at the plea stage what I knew then. And when the court saw clarification, he said, I don't want to talk about the guidelines calculations, I just want to talk about the pretrial violations. What I did in that moment was I actually rose in the defendant's defense as a prosecutor. I suggested to the district court that in a felony possession case, that I did not think this particular defendant was especially dangerous, because his only crime of violence was so old, and because his pretrial violations were actually drug violations, and suggested that he posed a danger to himself more than to others. So I don't know how many prosecutors at a sentencing actually suggest to a district court that a defendant is not especially dangerous, but that's what I did in this case. And then the judge, who I perceived at that time was maybe just a little bit exasperated, he actually interrupted me as I was prepared to continue addressing that question, and he said he just wanted to confirm that I was making the recommendation of 40 months. That's what he asked, and I said yes, your honor. So in the beginning, I asked that he accept the joint recommendation. I adopted defense counsel's points when I said I'd choose not to belabor the points already made. I did explain how my guidelines calculations were in error, and conveyed that perhaps, that I thought or assumed in the beginning, that someone would only get three criminal history points for a crime that was 30 years old. Then I, again, defended the defendant, offered mitigation on his behalf, and confirmed unequivocally that I was making the 40-month recommendation when the court asked in no uncertain terms. Well, and so I just want to, you know, maybe this is a different case because of your conduct after that statement, but what I worry about is the prosecutors wield enormous influence over, you know, making recommendations, because they know the case even sometimes better than the judge does. So I could just imagine a scenario where somebody says, do you stand by your recommendation? And the prosecutor says yes. But you know what? He had an extra five criminal history points there, and I think he's really more dangerous than is made out in the plea agreement, because he's, you know, I think he's going to go out and rob a bank, and it kind of goes on. And the district court says again, well, do you stand by the 40 months? Yeah, I stand by the 40 months. And then no surprise when the district court comes out and says 65 or 70 or 80 months, and then cites the dangerousness of the defendant. And so you understand what I'm saying. So it does create sort of a slippery slope. Where do you draw the line as to what a breach is? And I understand that, Your Honor. The hypothetical you're providing would be an example of a prosecutor giving the, quote, lip service to a recommendation. That's not what I did in this case. There was no lip service. There was no wink or a nod to the district judge. I wasn't speaking in coded language. I admitted a mistake. I was throwing myself at the mercy of the court when I perceived that he was annoyed with me. I thought, you know, he might indulge me a little bit and accept the joint recommendation that he was otherwise not inclined to accept if he understood it was the product of my mistaken assumption. So I understand just the language standing by the recommendation or just uttering the words, this is my recommendation. In some cases, that may not be enough, although the case law suggests in many cases it is enough. But that's just, that wasn't this case. And I know as an appellate court, you have to draw lines and you have to provide guidance for future litigants. But in this case, my statement about my miscalculations, that was not advocacy. I was not advocating one particular result. I certainly was not advocating against the joint recommendation. If anything, I was motivated that the court accept the joint recommendation because I also was very much aware, going into that sentencing hearing, that the plea agreement allowed for defendant to appeal any sentence above 40 months. So if the court were to sentence the defendant above 40 months, I could be facing and responding to an appeal. And while it is a professional honor to be here today, this was certainly not my aim when I went into that sentencing hearing. I wanted the court to accept the joint recommendation. In their briefing, appellant, they impute to me words that I did not speak, a motive that I did not have. The record speaks for itself. And actually, the record, while I suppose the errant comments I made are susceptible to the interpretation that's being offered, only if you view it in isolation. But when you view it in the larger context, I just don't think that is the interpretation that can reasonably be arrived at. And what the transcript does not show is what the district court and the defense counsel had the benefit of that day, which is seeing a person speak in real time, appreciating demeanor, tone of voice, facial expression, body language. And it did not occur to anyone in the courtroom at the time that I had breached the plea agreement when I made those comments. And I know this kind of ends up in a circularity argument, but the breach has to be clear or obvious. And the fact that no one recognized it at the time, I think, does suggest that it was neither clear nor obvious. The record, obviously, can be read on its own. Your honors weren't there in the courtroom to assess those things that I've already mentioned. But just to make one final point, I've got 20 seconds. Appellant counsel indicated that when Judge Ross said, I normally give great weight to joint recommendations, that he was signaling that the joint recommendation had not been made or fulfilled in this case. I think it's actually quite the opposite. He was saying, I normally, in the typical case, I will follow a joint recommendation. Normally, I follow the joint recommendation. But in this case, I cannot because of the facts of that case, because of defendant's history. So he wasn't signaling that the joint recommendation had not been made. He was, in fact, signaling it had been made, but he still could not follow it. We ask, your honors, that you affirm the district court sentence. Thank you. Thank you, Mr. Hayes. Ms. Gormerick, your rebuttal. Thank you, your honor. The question was, in the face of these bond violations, how could you make this joint recommendation? The answer was, it was a mistake. Implicit in that statement is an invitation to the court to correct the government's mistake. The government is correct that we knew of the possible skepticism of the court, which is why the United Front was that much more important, which is why, as defense counsel, I counseled Mr. Jennings to accept this offer, given the value of the joint recommendation in this case, that we're most likely to get out of the court with the sentence that we are requesting if both sides are asking for the same thing. The government's immediately undercutting that joint recommendation by explaining, essentially, that it wouldn't have made it but for this mistake in the guidelines, completely destroys the foundation of that joint recommendation, the power that it has, and leaves us in the situation where we are, where the court accepted the invitation to correct, sentenced him to the middle of what the actual guidelines range was. Your Honors, I would respectfully request that you remand this case to a new judge for resentencing in the district court. Thank you, Ms. Gorman. Thank you. Thank you also, Mr. Hayes. The court appreciates both counsel's argument before us this morning. We will continue to study the briefing and the materials and render a decision in due course. Thank you. Thank you. Madam Clerk, I believe that concludes our scheduled arguments for this morning's calendar. Yes, it does, Your Honor.